IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**MARCUS JARAL THOMPSON**                                                                                    **PLAINTIFF**

**V.**                                                                                     **NO. 4:16-CV-00026-DMB-JMV**

**GENERAL MOTORS LLC; and**
**THE ESTATE OF KEVIN MONZON,**
Deceased                                                                                                       **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This products liability action is before the Court on the motion to remand of Marcus Jaral Thompson. Doc. #14. Because one of the properly served and joined defendants in this action did not consent to removal, remand will be granted.

### I
### Procedural History

On October 5, 2015, Marcus Jaral Thompson filed a complaint in the Circuit Court of Leflore County, Mississippi, against General Motors, LLC ("GM LLC"), and the Estate of Kevin Monzon ("Estate"). Doc. #2. The complaint, which asserts negligence and product liability claims arising from an automobile accident in which Thompson was a passenger in a General Motors automobile driven by Monzon, alleges that: (1) "Plaintiff is an adult resident citizen of the State of Texas;" (2) the Estate was "opened in Copiah County, Mississippi;" and (3) "Defendant General Motors LLC is a Delaware limited liability company doing business in the State of Mississippi." *Id*. at ¶¶ 1–4. On January 13, 2016, the Estate, denying the negligence allegations, answered the complaint and filed a crossclaim against GM LLC and a third party claim against the unnamed driver of the other automobile involved in the collision. Doc. #1-5. The Estate's crossclaim seeks recovery for a wide variety of injuries and damages, including

medical expenses, funeral expenses, and "[t]he injuries and ultimate death of Kevin Monzon." *Id*. at ¶ 25.

On February 9, 2016, GM LLC, alleging diversity jurisdiction, removed the case to this Court. Doc. #1. The notice of removal alleges that: (1) Thompson is a citizen of Texas; (2) GM LLC is a citizen of Delaware and Michigan;[1] and (3) "Monzon's Estate is a citizen of Mississippi because Monzon was a resident and citizen of Mississippi." *Id*. at ¶ 23–25. The notice of removal contends that "Monzon's Estate was improperly joined as a Defendant and its citizenship should not be considered for purposes of removal and diversity jurisdiction." *Id*. at ¶ 6. Approximately one week later, on February 15, 2016, counsel for the Estate sent an e-mail to Thompson's counsel stating that the Estate "does not consent to the removal in this case." Doc. #14-3.

On March 9, 2016, Thompson filed a motion to remand. Doc. #14. The same day, the Estate filed a "Joinder of Trinidad Monzon, Administratrix of the Estate of Kevin Monzon, Deceased in Plaintiff's Motion to Remand." Doc. #15. On March 14, 2016, GM LLC filed a motion for remand-related discovery, which was granted in part on April 14, 2016. Doc. #17; Doc. #24. At the conclusion of remand-related discovery, GM LLC responded in opposition to the motion to remand on May 16, 2016. Doc. #30. Thompson did not reply in support of his remand motion.

---

[1] GM LLC alleges that it is a limited liability company with only one member – General Motors Holdings LLC. Doc. #1 at ¶ 27–28. GM LLC further alleges that General Motors Holdings LLC is a limited liability company with only one member – General Motors Company, "a Delaware corporation with its principal place of business in Michigan ...." *Id*. at ¶ 29–31. These allegations sufficiently plead the citizenship of GM LLC. *See Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008) ("[T]he citizenship of a LLC is determined by the citizenship of all its members.").

2

# II
# Analysis

"A party may remove an action from state court to federal court if the action is one over which the federal court possesses subject matter jurisdiction. The removing party bears the burden of showing that federal jurisdiction exists and that removal was proper." *Manguno v. Prudential Prop. and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) (citation omitted).

### A. Federal Jurisdiction

In its notice of removal, GM LLC argues that this action implicates the Court's diversity jurisdiction. Diversity jurisdiction requires that there be: (1) complete diversity between the parties; and (2) an amount in controversy in excess of $75,000. 28 U.S.C. § 1332; *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996). Complete diversity, in turn, "requires that all persons on one side of the controversy be citizens of different states than all persons on the other side." *Harvey*, 542 F.3d at 1079 (internal quotation marks omitted).

With regard to the amount in controversy, the state court complaint pleads, "It is not possible … to plead the exact amounts of all damages at this time, but they clearly exceed Seventy-Five Thousand Dollars …." Doc. #2 at ¶ 48. This allegation is supported by Thompson's request for damages arising from "medical testing, invasive procedures, loss of function in his legs and arms, physical impairment, disfigurement, limitation of activities, loss of enjoyment of life, physical and emotional pain, physical and emotional suffering, mental anguish, medical bills and expenses and all other damages allowed under the law." *Id*. at ¶ 47. Under these circumstances, the Court concludes that the amount in controversy requirement has been met. *See McCabe v. Ford Motor Co.*, No. 1:10-cv-98, 2010 WL 2545513, at *6 (E.D. Tex. June 21, 2010) ("Given the severity of [the] injuries, the nature of the damages alleged, and a

review of cases involving similar or less severe injuries, recovery in excess of $75,000.00 could reasonably be expected in this case.") (collecting cases).

Regarding complete diversity, GM LLC alleges that: (1) it is a citizen of Michigan and Delaware; (2) Thompson is a citizen of Texas; and (3) the Estate is a citizen of Mississippi. These allegations satisfy the requirement of complete diversity.

### B. Propriety of Removal Procedure

A defendant to a state court action may remove "any civil action … of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). However, of relevance here, "[w]hen a civil action is removed solely under section 1441(a), all defendants who have been properly joined and served must join in or consent to the removal of the action." 28 U.S.C. § 1446(b)(2)(A). While "lack of consent is not a jurisdictional defect, [it] requires remand of [an] entire case to state court unless … an exception to the rule of unanimity [applies]." *Breitling v. LNV Corp.*, 86 F.Supp.3d 564, 570 (N.D. Tex. 2015) (citing *Johnson v. Helmerich & Payne, Inc.*, 892 F.2d 422, 423 (5th Cir. 1990)) (citations omitted).

The Fifth Circuit has recognized three exceptions to the rule of unanimity:

(1) improperly or fraudulently joined defendants, *see Jernigan v. Ashland Oil Inc.*, 989 F.2d 812, 815 (5th Cir.2003); (2) nominal or formal parties, *see Farias v. Bexar Cnty. Bd. of Tr. for Mental Health Mental Retardation Servs.*, 925 F.2d 866, 871 (5th Cir.1991); and (3) defendants who have not been served by the time of removal, *see Jones v. Houston Indep. Sch. Dist.*, 979 F.2d 1004, 1007 (5th Cir.1992).

*Eagle Capital Corp. v. Munlake Contractors, Inc.*, No. 5:10-cv-99, 2012 WL 568701, at *2 (S.D. Miss. Feb. 21, 2012). Thompson argues in his motion to remand that remand is required because the Estate did not consent to removal. GM LLC concedes that the Estate did not consent but

4

responds that the Estate's "consent to … removal was not required because it is a nominal party and realignment is proper."[2] Doc. #30 at 3.

### 1. Nominal Party

The Fifth Circuit has held that "[t]o establish that non-removing parties are nominal parties, the removing party must show that there is no possibility that the plaintiff would be able to establish a cause of action against the non-removing defendants in state court." *Farias*, 925 F.2d at 871 (internal quotation marks omitted). Some district courts in this circuit have expanded the definition to include parties with no assets. *See Inman Constr. Corp. v. S. Pilot Ins. Co.*, No. 4:06-cv-169, 2007 WL 1657422, at *2 (N.D. Miss. June 5, 2007) ("Decisions from numerous jurisdictions, including Mississippi, recognize that parties which are in liquidation and have no assets when litigation against them is commenced are nominal parties which need not join in a notice of removal filed by another defendant.") (collecting cases). However, in a well-reasoned opinion, United States District Judge Michael P. Mills rejected this line of cases as "over emphasiz[ing] the law's function as a means to transfer wealth." *Wise v. Ill. Cent. R.R. Co.*, No. 2:08-cv-259, 2009 WL 3824398, at *2 (N.D. Miss. Nov. 12, 2009). Rather, Judge Mills held that a party's insolvency does not render it a nominal party because "[t]he advance of an injured party's economic interests is … not the only goal [of litigation]. Mississippi law recognizes that vindication in court without economic gain is sometimes the only relief available

---

[2] Although the notice of removal alleges that the Estate was improperly joined, this issue was not raised in response to the motion to remand. This argument is thus deemed waived. *Campbell v. J&B Motorsports, LLC*, No. 3:15-cv-00159, 2016 WL 3964406, at *4 (N.D. Miss. July 22, 2016) ("A ground for removal that is included in a notice of removal but not raised in response to a motion to remand is deemed waived.") (citing *Fournier v. Lufthansa German Airlines*, 191 F.Supp.2d 996, 1005 (N.D. Ill. 2002). Furthermore, because the Court concludes below that Thompson has stated a viable claim against the Estate and that there is thus a possibility of recovery against the Estate, there is no issue of improper or fraudulent joinder here. *See Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) ("[T]he test for fraudulent joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against the in-state defendant.").

or desired." *Id*. (citing *Biglane v. Under the Hill Corp.*, 949 So.2d 9, 17 (Miss. 2007)). Another court has noted that a party's insolvency does not render it a nominal party under the rule of unanimity because a court's jurisdiction is not premised "upon the strength or weakness of a given defendant's financial statements. If this were true, a great number of cases now pending in the federal courts of this country would be improper due to the fact that some or all of the defendants in those suits are judgment proof." *Bellone v. Roxbury Homes, Inc.*, 748 F.Supp. 434, 437 (W.D. Va. 1990); *accord, Dennis v. Progressive N. Ins. Co.*, No. 14-1375, 2015 WL 1356922, at *2 (W.D. Okla. Mar. 24, 2015) ("[T]he court has considerable doubt that an otherwise proper defendant becomes 'nominal' simply by having no assets or by running out of money.") (citing *Bellone*). Still other courts have rejected the insolvency theory on the ground that "there does not appear to be any bar against plaintiffs seeking a judgment against [an insolvent defendant], which [the plaintiffs] could attempt to collect at any point in the future." *Williams ex rel. McIntosh v. City of Beverly Hills,* No. 4:07-cv-661, 2007 WL 2792490, at *5 (E.D. Mo. Sep. 24, 2007).

This Court concludes that the line of cases rejecting insolvency as a basis for deeming a party to be nominal represents the better reasoned view more consistent with the Fifth Circuit's direction that a nominal inquiry center on the plaintiff's ability "to establish a cause of action" against the alleged nominal party. *See Farias*, 925 F.2d at 871. Accordingly, the Estate's alleged lack of assets cannot justify a finding that the Estate is a nominal party. Even if a party could be deemed nominal based on insolvency, such a rule would be inapplicable here.

In his motion to remand, Thompson argues that the Estate is not a nominal party because he can establish a cause of action against it and because it has assets, including the crossclaim against GM LLC, and may locate other assets before its termination. Doc. #14 at 12. In a single

6

paragraph in its response brief, GM LLC, citing *Stuckey v. Illinois Central Railroad Company*, argues that the Estate should be declared a nominal party because "[a]n insolvent defendant should be considered a 'nominal' party." Doc. #30 at 8–9 (citing *Stuckey v. Ill. Cent. R.R. Co.*, No. 2:96-cv-47, 1996 WL 407247, at *3 n.2 (N.D. Miss. June 5, 1996)).

In *Stuckey*, a car crash case, the district judge held that the estate of the deceased driver of the vehicle occupied by the decedent plaintiff's estate was "[a]rguably" a nominal party because the estate had "no assets upon which [the plaintiff] might seek execution of judgment." 1996 WL 407247, at *3 n.2. In reaching this conclusion, the court noted that, under Mississippi's Wrongful Death Act, "any damages awarded to wrongful death beneficiaries ... are not subject to the debts and liabilities of [the] estate." *Id.*

Generally, under Mississippi law, a wrongful death claim is not part of the decedent's estate. *Franklin v. Franklin ex rel. Phillips*, 858 So.2d 110, 115 (Miss. 2003). However, "the estate is entitled to recover funeral costs and final medical expenses." *Long v. McKinney*, 897 So.2d 160, 169 (Miss. 2004). Here, the Estate's crossclaim against GM LLC seeks recovery for Monzon's funeral costs and medical expenses. Because these claims are subject to the debts and liabilities of the Estate, the Court rejects GM LLC's assertion that the Estate is a nominal party because it lacks assets.

### 2. Realignment

Next, GM LLC asks the Court to realign the parties to place the Estate on the same side of the dispute as Thompson because "Thompson and [the] Estate have identical interests in this case." Doc. #30 at 4. In seeking remand, Thompson argues that the Fifth Circuit does not recognize realignment as an exception to the rule of unanimity and that even if realignment could be deemed an exception to the unanimity requirement, the Estate should not be realigned as a

7

party plaintiff. Doc. #14 at 17–19. Because this Court concludes that the parties are properly aligned, it declines to address the unclear issue of whether realignment represents an exception to the rule of unanimity.[3]

In exercising its power to realign, "a court must 'look beyond the pleadings and arrange the parties according to their sides in the dispute.'" *Zurn Indus. v. Acton Constr. Co.*, 847 F.2d 234, 236 (5th Cir. 1988) (quoting *City of Indianapolis*, 314 U.S. at 69). "In this Circuit, the generally accepted test of proper alignment is whether the parties with the same ultimate interests in the outcome of the action are on the same side." *Griffin*, 621 F.3d at 388 (internal quotation marks omitted). "Whether the necessary collision of interest exists must be ascertained from the principal purpose of the suit and the primary and controlling matter in dispute." *Id.* (internal quotation marks omitted). "The determination of the primary and controlling matter in dispute does not include the cross-claims and counterclaims filed by the defendants. Instead, it is to be determined by plaintiff's principal purpose for filing its suit." *Zurn Indus.*, 847 F.2d at 237. If

---

[3] In *Griffin v. Lee*, the Fifth Circuit, quoting *City of Indianapolis v. Chase National Bank of City of New York*, 314 U.S. 63, 69 (1941), held that "[i]n ascertaining the proper alignment of parties *for jurisdictional purposes*, courts have a 'duty' to look beyond the pleadings, and arrange the parties according to their sides in the dispute." 621 F.3d 380, 388 (5th Cir. 2010) (emphasis added). Courts in this circuit and elsewhere have struggled to fit the concept of realignment announced in *City of Indianapolis* into both the rule of unanimity and the broader procedural framework of removal. At least one court has held that *City of Indianapolis* realignment cannot be used as an ex post facto justification for removal. *Roblez v. Ramos*, No. 3:01-cv-366, 2001 WL 896942, at *3 (S.D. Tex. Aug. 1, 2011). Other courts have held that realignment may be used to evaluate jurisdiction on removal but not as an exception to the rule of unanimity. *See, e.g., Energy Partners of Del., Ltd. v. Dominion Exp. & Prod., Inc.*, No. 05-6641, 2006 WL 1030391, at *4 (E.D. La. Apr. 18, 2006) (holding that "[t]he distinction between realigning parties for diversity jurisdiction and for consent to removal is an important one" and concluding that realignment for consent purposes "probably does not apply"); *Eagle Capital Corp. v. Munlake Contractors, Inc.*, No. 5:10-cv-99, 2012 WL 568701, at *2 (S.D. Miss. Feb. 21, 2012) ("The Fifth Circuit has not recognized realignment of parties as an exception to the rule of unanimity."). One court deemed realignment an exception to the rule of unanimity where the realignment was done for jurisdictional purposes. *See Doe v. Sharma*, No. 3:07-cv-172, 2008 WL 3339942, at *3–5 (S.D. Miss. Aug. 6, 2008) (realigning parties to create diversity jurisdiction and holding consent of realigned parties was not required for removal). Finally, in the context of post-removal service under 28 U.S.C. § 1448, at least one court, *Stuckey*, has applied realignment as an exception to the rule of unanimity, irrespective of jurisdictional concerns. 1996 WL 407247, at *3. Despite this variance in views, "in a more recent trend, courts in our circuit consistently disfavor realignment after removal." *Bilyeu v. Wells Fargo Ins. Servs., USA, Inc.*, No. 1:16-cv-23, 2016 WL 5721060, at *7 (W.D. La. Aug. 8, 2016).

8

the principal purpose of the suit produces an actual collision of interest, realignment is improper unless the claim is a "sham." *Id.*

Two district courts in this state have applied the realignment test to factual situations similar to the one at issue here. In *Stuckey*, the district court considered the alignment of parties in a wrongful death action arising out of a collision between a vehicle driven by deceased Bobby Gates and an Amtrak train at an Illinois Central railroad crossing. 1996 WL 407247, at *2. The plaintiff alleged that "the negligence of Illinois Central and Amtrak proximately caused or contributed to the accident and death of the plaintiff's decedent [and] that Gates' operation of the vehicle was a contributing but not the sole cause of the accident." *Id.* The administrator of Gates' estate filed a wrongful death crossclaim against Illinois Central and Amtrak, on behalf of the estate and Gates' wrongful death beneficiaries. *Id.* Based on those allegations, the *Stuckey* court concluded that the administrator of Gates' estate "should be realigned as a plaintiff whose allegations ... are identical to those raised by [the] plaintiff ... in the instant cause." *Id.* at *3.

In *Walker v. Cooper Tire & Rubber Co.*, the district court considered the alignment of parties where passengers in a car involved in a crash sued the driver of the car for negligence and the manufacturer of the car's tires under Mississippi's Products Liability Act. No. 5:06-cv-17, 2006 WL 2975486, at *1 (S.D. Miss. Oct. 17, 2006). The driver filed a crossclaim under the MPLA against the tire manufacturer, which removed the action to federal court. *Id.* Post-removal, the tire manufacturer argued that the driver, who was related to the plaintiffs, should be realigned as a party plaintiff. *Id.* The *Walker* court, applying the collision of interests test, held that "the plaintiffs' primary purpose [was] to seek redress for injuries suffered in a single-car accident." *Id.* at *4. The court then concluded that there was a "substantial controversy between the [driver] and the plaintiffs [because the plaintiffs] sued [the driver] for negligently operating a

9

motor vehicle and causing them physical and emotional injuries [and n]o evidence [had] been presented indicating that this claim [was] a sham or collusive act with the purpose of preventing the invocation of federal jurisdiction." *Id*. The court noted that "the controlling inquiry is whether there is a *bona fide* dispute between [the driver] and the plaintiffs; it is immaterial at this juncture that [the driver] filed a cross-claim against [the tire manufacturer]." *Id*. (citing *Roblez*, 2001 WL 896942, at *1).

In *Stuckey*, the district court neither cited nor applied the relevant collision of interest test. Rather, it appears the *Stuckey* court based its realignment decision purely on the conclusion that both the passenger and the driver made identical allegations against the other defendants. This analysis necessarily included consideration of the driver's crossclaim, an improper consideration in the realignment analysis. *Zurn Indus.*, 847 F.2d at 236. The *Walker* court, in contrast, both stated and applied the relevant test. The Court therefore finds *Walker* more persuasive than *Stuckey*.

Here, as in *Walker*, the primary purpose of this action is to seek redress for injuries suffered in a car accident. Also here, as in *Walker*, there is a substantial controversy between Thompson and the Estate arising from whether Monzon negligently caused injury to Thompson, a charge which the Estate denies. Under these circumstances, the Court concludes that Thompson and the Estate have a collision of interests and are, therefore, properly aligned. Accordingly, realignment must be denied unless Thompson's negligence action against the Estate may be considered a sham. *Id*.

In its remand motion, GM LLC argues that "[t]he only reason for Thompson to pursue his negligence claim against Monzon is to defeat diversity jurisdiction – Monzon had no insurance that might cover an adverse judgment, and the Estate has no meaningful assets." Doc. #30 at 4.

10

As explained above, the Estate has assets in the form of its claims for medical and funeral expenses against GM LLC. Furthermore, the Estate represents that it may have a half an interest in a Ford truck. Doc. #30-3. Even if these assets did not exist or were not recoverable by Thompson, the potential amount of recovery for a given claim is irrelevant as to whether the claim itself is a sham. *See Roblez*, 2001 WL 896942, at *3 ("[W]eighing the size of the various claims flies in the face of *Zurn*, which teaches that once the original claim is tested for complete diversity of citizenship, the addition of other claims neither creates nor destroys jurisdiction.") (internal punctuation omitted); *see generally New Life Assembly of God of City of Pampa v. Church Mut. Ins. Co.*, No. 2:15-cv-00051, 2015 WL 2234890, at *8 (N.D. Tex. May 12, 2015) ("A court should not be in the business of penalizing a plaintiff who chooses to sue defendants that may not be able to pay one-hundred percent of a hypothetical judgment entered by the court. If a plaintiff's complaint states a valid cause of action against individual defendants, the fact that the defendants are insolvent or have limited financial resources should not preclude their joinder."). The Court thus concludes that Thompson's negligence action against the Estate is not a sham and that realignment of the Estate would be improper.

### III
### Conclusion

The Estate, a properly served defendant in this action, did not consent to removal. Because GM LLC has not shown that an exception to the rule of unanimity applies, Thompson's motion for remand [14] is **GRANTED**. This case is remanded to the Circuit Court of Leflore County, Mississippi.

**SO ORDERED**, this 28th day of December, 2016.

/s/ **Debra M. Brown**
**UNITED STATES DISTRICT JUDGE**